*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL ROE,

Plaintiff-Appellee,

UNPUBLISHED
June 15, 2023

v

No. 363040
Lenawee Circuit Court
LC No. 2020-047732-DM

ANGELA ROE,

Defendant-Appellant.

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's opinion and order awarding joint legal and physical custody of the parties' minor children to both parties following a divorce and custody trial. We affirm.

## I. BACKGROUND

This case arises from highly contentious custody proceedings between the parties regarding their three minor children, MJR, EMR, and EGR. The parties were married in 2009, but separated in January 2021. After the parties separated, plaintiff left the marital home and moved in with his parents. Throughout these proceedings, plaintiff faced multiple allegations of physical and sexual abuse involving his children, all of which were investigated by Children's Protective Services (CPS) and law enforcement. None of the allegations were substantiated. Following a three-day divorce and custody trial, the trial court concluded that the children had an established custodial environment with each party, and, after the trial court weighed the best interest factors under MCL 722.23, it awarded the parties joint legal and physical custody of the children. Defendant now appeals as of right.

## II. THE ESTABLISHED CUSTODIAL ENVIRONMENT

On appeal, defendant first argues that the trial court's finding that both parties had an established custodial environment with the children was against the great weight of the evidence. Defendant claims that this error led the trial court to employ the incorrect evidentiary standard under MCL 722.27(1)(c) when awarding the parties joint legal and physical custody. She contends

-1-

that, because plaintiff did not enjoy an established custodial environment with the children while defendant did, defendant was only required to establish by a preponderance of the evidence that her request for sole legal and physical custody was in the best interests of the children.

## A. STANDARD OF REVIEW

MCL 722.28 provides that when reviewing a lower court order in a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This statute distinguishes among three types of rulings "and assigns standards of review to each." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011) (quotation marks and citation omitted). The first type is factual findings, which "are reviewed under the 'great weight of the evidence' standard." *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). The second type is questions of law, which are reviewed for clear legal error. *Id*. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). The third type is discretionary rulings, which are reviewed for a palpable abuse of discretion. *Dailey*, 291 Mich App at 664. "An abuse of discretion exists when the trial court's decision is palpably and grossly violative of fact and logic." *Id*. at 664-665 (quotation marks, citations, and alteration omitted).

A trial court's finding with respect to whether an established custodial environment exists is a factual finding subject to the great-weight-of-the-evidence standard. *Pennington*, 329 Mich App at 570.

## B. ANALYSIS

MCL 722.27(1)(c) addresses the creation of an established custodial environment. It provides, in pertinent part:

> The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. *The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort*. [Emphasis added.]

A child may have an established custodial environment in more than one home. *Pennington*, 329 Mich App at 578.

If a proposed modification to the parties' custody arrangement would change the children's established custodial environment, the moving party must show by clear and convincing evidence that the change is in the children's best interest. *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). "If the proposed change does not change the custodial environment, however, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*.

-2-

The trial court's factual determination that the children shared an established custodial environment with both parties was not against the great weight of the evidence. The trial court began its analysis by recognizing that the children enjoyed an established custodial environment with both parties before these proceedings began, and defendant does not challenge that finding on appeal. Rather, defendant asserts that plaintiff's established custodial environment with the children was significantly disrupted by his absence from their lives after these proceedings commenced, focusing heavily on the fact that the interruptions in his parenting time were due to the CPS and law enforcement investigations. The trial court agreed with defendant that this was a "turbulent period," but concluded that it was "not sufficient to . . . alter plaintiff's regular involvement in the children's lives," which is supported by the record. For instance, both plaintiff and his mother testified about the numerous activities that plaintiff enjoyed with the children during their visits while these proceedings were ongoing. While plaintiff conceded that his children were initially reluctant to visit with him and to leave defendant, he was also clear that, once they were with him, they warmed to him and enjoyed their time with him. As an example, plaintiff said that EMR, who was experiencing some significant emotional challenges, would become very angry and aggressive with plaintiff, hitting him and telling him that she hated him, but plaintiff would speak to her, comfort her, and was able to assist her in regulating her emotions so that she could settle herself and eventually enjoy her time with him. Plaintiff also described how the children were physically affectionate with him, hugging him and sitting on his lap. All of this evidence supports the trial court's conclusion that the children turned to plaintiff for guidance, parental comfort, and support with the necessities of life, even after the extended absences from his children that plaintiff incurred because of the allegations of abuse.

Defendant contends that the trial court could not have found an established custodial environment with plaintiff because, at one point during plaintiff's testimony, he said that his parents handle discipline while the children are with him. See MCL 722.27(1)(c) ("The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, *discipline*, the necessities of life, and parental comfort.") (Emphasis added.) Yet, as plaintiff points out on appeal, he plainly testified about how he disciplines the children—he said that he gets down to their eye-level and calmly talks to them to correct their behavior. While defendant is correct that plaintiff testified that his parents were stepping in to discipline the children, plaintiff explained that this was because he was "getting falsely accused" of abuse at the time and did not want to "take any chances." He emphasized, however, that the children were generally well-behaved, and that he would discipline them when necessary. Given this, and the other facts previously discussed, we conclude that the evidence does not clearly preponderate in the opposite direction of the trial court's conclusion that an established custodial environment existed with both parties.

Defendant insists that, even if an established custodial environment existed with both parties, the preponderance-of-the-evidence standard should still have applied to her request for sole legal and physical custody because her request would not have changed the children's established custodial environment. We agree with plaintiff, however, that defendant has not sufficiently briefed this argument with citation to supporting authority, such that the argument is effectively abandoned. See *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996). Even if we attempted to address defendant's argument, it is unclear how granting sole legal and physical custody of the children to defendant would not change the children's established custodial environment—it seems that they would clearly go from an established custodial environment with

both parties to a single established custodial environment with defendant. As explained, if a proposed modification to the parties' custody arrangement would change the children's established custodial environment, the moving party must show by clear and convincing evidence that the change is in the children's best interest. *Shade*, 291 Mich App at 23. Accordingly, we reject defendant's argument.

For these reasons, we conclude that the trial court's finding that an established custodial environment existed with both parties was not against the great weight of the evidence. Therefore, the trial court's holdings that (1) defendant needed to demonstrate by clear and convincing evidence that her request for sole legal and physical custody was in the best interests of the children, and (2) plaintiff needed to demonstrate by only a preponderance of the evidence that his request for joint legal custody was in the best interests of the children, was in accord with MCL 722.27(1)(c), and defendant has not otherwise demonstrated that the trial court erred as a matter of law with regard to its application of the evidentiary standard.

## III. THE BEST INTEREST FACTORS UNDER MCL 722.23

Defendant next challenges the trial court's findings on several of the best-interest factors under MCL 722.23.

## A. STANDARD OF REVIEW

A trial court's finding on a custody factor is a factual finding subject to the great-weight-of-the-evidence standard. *Pennington*, 329 Mich App at 570. The ultimate decision of to whom custody should be awarded is a discretionary ruling reviewed for a palpable abuse of discretion. *Dailey*, 291 Mich App at 664.

## B. ANALYSIS

In weighing the best interests of the minor children, a trial court is required to consider the factors set forth in MCL 722.23, which provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

-4-

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Defendant challenges the trial court's determinations with regard to factors (b), (f), (g), (k), and (*l*).

### 1. FACTOR (B)

Turning first to factor (b), "the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any," MCL 722.23(b), the trial court stated that both parties had demonstrated their ability to give the children love, affection, and guidance. The trial court highlighted each party's testimony about the children's love for the other party, as well as each party's testimony about their own love, affection, and emotional ties with the children.

Defendant contends that the trial court improperly weighed this factor because the record is "replete with examples of [plaintiff's] inability to provide the children with appropriate affection and guidance." In support of this contention, defendant points to the allegations of physical and sexual abuse levied against plaintiff. However, CPS and law enforcement conducted thorough investigations of these allegations against plaintiff, and all of the allegations were found to be without merit and substance. The mere fact that the allegations exist do not support that the trial court's finding on factor (b) was against the great weight of the evidence.

-5-

Defendant also asserts that the children were "highly resistant to parenting time" with plaintiff. While there is support in the record for defendant's assertion, there was also ample evidence that, once the children were with plaintiff, they enjoyed their time with him. For instance, when asked about his relationship with MJR, plaintiff stated that they were "really close," and while MJR will act like she does not want to come with him initially, as soon as they leave defendant's home, she is content and asks to play a song on his phone. He said that they bond over Christian worship music, that MJR likes plaintiff to rock her to sleep, and that they still play games together, including card games and kickball. Plaintiff also said that MJR is very physically active—she plays basketball, volleyball, softball, and soccer—and plaintiff attends all of MJR's sports games to the extent he could, given defendant's personal protection order (PPO) against him. With respect to EMR, plaintiff said that they enjoy playing kickball, basketball, and card games together, as well as fishing. Plaintiff further testified that he plays age appropriate card games with EGR such as Baby Shark and Mouse Trap, as well as kickball.

Accordingly, while defendant raises valid concerns, the record reflects that the trial court's conclusion was not against the great weight of the evidence. Defendant is correct that plaintiff was accused of physical and sexual abuse of the children, but those allegations were never substantiated, and the trial court did not otherwise credit the allegations. Likewise, while there was evidence that the children were resistant to going to plaintiff's parenting time, there was also evidence that plaintiff had positive, healthy relationships with all three children, and that he was an active, attentive, and involved father to the extent he could be with the pending CPS and law enforcement investigations. Accordingly, giving deference to the trial court's ability to gauge the credibility of the witnesses, we are not persuaded that the trial court's findings on factor (b) were against the great weight of the evidence.

## 2. FACTOR (F)

Defendant argues that the trial court's factual determinations regarding factor (f) were against the great weight of the evidence, and that this factor ought to have weighed in favor of defendant, because the allegations of sexual and physical abuse against plaintiff. We disagree.

Factor (f) addresses "[t]he moral fitness of the parties involved," MCL 722.23(f), and the trial court held that the record did not demonstrate, by a preponderance of the evidence, that either party had an issue with their moral fitness that impacted their ability to parent the children. The court recognized that the allegations of physical and sexual abuse implicated "moral fitness issues," but found that the allegations were not sufficiently established. The record reflects that there were multiple CPS and law enforcement investigations into the veracity of the allegations, all of which found the allegations to be without substance. The trial court emphasized that it was not basing its decision that no abuse was established solely on the findings of CPS and law enforcement, but noted that their findings on the matter were persuasive, and concluded that the allegations against plaintiff had not been otherwise proven. We discern no error in the trial court's reasoning, and, given the deference this Court must give to the trial court as the factfinder, we conclude that its findings on this factor are not against the great weight of the evidence.

## 3. FACTOR (G)

Defendant next contends that the trial court's factual findings on factor (g) were against the great weight of the evidence. We disagree.

MCL 722.23(g) addresses "[t]he mental and physical health of the parties involved." The trial court weighed factor (g) equally with regard to both parties, concluding that "[t]here was no evidence that either party has a physical or mental health issue that would affect their ability to parent the children."

Defendant claims that this factor should have been weighed against plaintiff because plaintiff admitted that he had to take time off work because of anxiety he was experiencing due to the divorce proceedings. Defendant omits, however, that plaintiff said that his anxiety also stemmed from the allegations that he was physically and sexually abusing his children—allegations that were all unsubstantiated. Regardless, we decline to use plaintiff's desire to address his mental health by taking a leave of absence from work as evidence that his mental health will affect his ability to appropriately parent the children. To the contrary, plaintiff's taking a leave of absence from work to address his mental health tends to assuage, rather than reinforce, defendant's fear that plaintiff is refusing to adequately address his mental health. While defendant would seemingly prefer that plaintiff care for his mental health in other ways—such as through medication—she has not presented any evidence that plaintiff's preferred treatment methods were ineffective, or that her preferred treatment method would better address plaintiff's mental health needs. In fact, defendant has not presented any evidence that plaintiff was dealing with a mental health condition that impacted or in any way undermined his ability to be a fit parent to his children, and the record does not otherwise reflect that plaintiff was unable to meet the responsibilities of parenting his children as a result of the stress he had been dealing with. In short, the record demonstrates that plaintiff responsibly cared for his mental health by taking a leave of absence from work to ensure that he would be able to parent his children in a healthy way. Accordingly, we are not persuaded that the trial court's findings on factor (g) were against the great weight of the evidence.

## 4. FACTOR (J)

Defendant next challenges the trial court's factual findings on factor (j), which addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). For this factor, the trial court noted that (1) defendant admitted that she had spoken negatively about plaintiff in front of the children, (2) defendant did not facilitate parenting time even before the abuse allegations that resulted in multiple CPS investigations, surfaced, (3) defendant changed the children's school without the consent of plaintiff, resulting in the children being moved further away from him, and (4) defendant changed the children's medical providers without plaintiff's consent, and without informing him of the identities of the new providers. Based on these findings, the trial court reasoned that "[defendant] appears to be attempting to exclude [plaintiff] from as much of the children's lives as possible," and accordingly found that this factor favored plaintiff.

On appeal, defendant does not contest the trial court's finding that she refused to facilitate plaintiff's parenting time even before the abuse allegations surfaced. She also admits that she spoke negatively about plaintiff in front of the children, and that she changed the children's medical providers without plaintiff's consent. On this latter point, however, defendant contends that it is not evidence of her excluding plaintiff from the children's lives, but rather, she was simply maintaining "the status quo" because she was responsible for the children's medical care while defendant and plaintiff were together. While there is evidence in the record supporting defendant's contention, her argument ignores plaintiff's testimony that he was familiar with the children's old doctor, that he did not want the children to change doctors, and that defendant changed the children's doctor without talking to plaintiff first. Moreover, it does not appear from the record that defendant ever provided the names of the children's new physicians to plaintiff. This evidence, taken together, plainly supports the trial court's conclusion that defendant was attempting to exclude plaintiff from this aspect of the children's lives. While defendant offers a plausible alternative explanation, the evidence does not clearly preponderate against the trial court's finding to the contrary, such that we will not disturb that finding on appeal.

With respect to the trial court's last finding—that defendant changed the children's school without talking to plaintiff first—defendant seems to maintain that the record does not support this conclusion. According to defendant, plaintiff "did not begin actively opposing the school change until he began to fear that his reputation at the new school was suffering . . . ." This is not completely accurate, however—it ignores plaintiff's testimony that defendant moved the children's school without plaintiff's knowledge or consent, such that he never had an opportunity to voice his opposition to it. This in turn supports the trial court's factual findings; the court never discussed when or why plaintiff opposed the children's school change, only that defendant changed the children's school without talking to plaintiff first. Defendant's argument on appeal also ignores that plaintiff's concerns about his image at the children's new school was not selfish, but rather, he was concerned that a poor image at the school would make it harder for him to be involved in the children's school activities. He explained that he wanted the children to return to the children's old schools because defendant had "painted a picture of me being this terrible human being to [the] teachers [at the new school] . . . to where I can't help with any schooling activities." Defendant otherwise cites her own testimony to support that plaintiff was involved in the decision to change the children's schools, but that testimony conflicted with plaintiff's testimony. To the extent that the evidence was conflicting and hinged on the credibility of the witnesses, we defer to the trial court's credibility determination, and are unable to conclude that the trial court's factual finding was against the great weight of the evidence.

Accordingly, for these reasons, we conclude that the trial court's factual findings with respect to factor (j) were not against the great weight of the evidence. Those findings, in turn, adequately supported the trial court's conclusion that "[defendant] appears to be attempting to exclude [plaintiff] from as much of the children's lives as possible," such that the trial court appropriately weighed factor (j) in favor of plaintiff.

## 5. FACTOR (K)

Defendant next challenges the trial court's factual findings with regard to factor (k). Factor (k) addresses "domestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). For this factor, defendant reiterates her argument that

"more than ample evidence" established that plaintiff physically and sexually abused the children.[1] The trial court acknowledged the allegations that plaintiff physically and sexually abused the children, but concluded that they had not been proven by a preponderance of the evidence. In support of its conclusion, the trial court reasoned that of the three different sets of allegations pursued against plaintiff, all were found to be unsubstantiated for different reasons. The trial court noted that the first set of the allegations of physical abuse were found to be unsubstantiated because the children gave inconsistent accounts of the abuse, and the description of the abuse that MJR gave was not consistent with the bruises found on her body. The trial court noted that the second allegations of physical abuse were found to be without credence because it was determined that the bruises found on the children were not consistent with their allegations of abuse. The third set of allegations, this time regarding both physical and sexual abuse, were unsubstantiated because, after scheduling forensic interviews, EGR was not able to complete the interview, and MJR and EMR did not disclose any sexual abuse during their interviews. While MJR and EMR did disclose physical abuse during their interviews, the officer present for the interviews determined that the disclosures related to previous allegations brought forward in a different county that had already been investigated by another law enforcement official without charges being brought, and a CPS investigation also found the allegations to be unsubstantiated. In light of the thorough investigations conducted by CPS and law enforcement related to all three allegations of abuse, as well as the trial court's careful consideration of the evidence of abuse despite the allegations being unsubstantiated, we conclude that the trial court's finding that the allegations of abuse were not sufficiently established was not against the great weight of the evidence. Accordingly, the trial court did not err when it concluded that factor (k) favored neither party.

6. FACTOR (L)

Finally, defendant challenges the trial court's finding with respect to factor (*l*). Factor (*l*) addresses "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). For this factor, the trial court observed that the record yielded allegations of sexual abuse against plaintiff which were investigated by both CPS and law enforcement, but found to be unsubstantiated. The trial court also noted that the sexual assault nurse examiner (SANE) who examined EGR declined to form a conclusion regarding whether EGR had in fact been sexually assaulted but she had reported them to CPS. On the basis of the SANE's testimony, the trial court determined that defendant had not proven, by a preponderance of the evidence, the allegations of sexual assault against plaintiff. Accordingly, the trial court determined that factor (*l*) was neutral as between the parties.

Defendant acknowledges that CPS and law enforcement investigated EGR's allegations and subsequently closed the case, and, on appeal, essentially challenges the law enforcement

---

[1] At trial, defendant also testified regarding an incident of domestic violence that occurred on the night that the parties separated. The trial court acknowledged this testimony, and noted that, although the police were called, no one was arrested as a result of that incident. The trial court ultimately found that, on the basis of the evidence, plaintiff's alleged domestic violence against defendant had not been demonstrated by a preponderance of the evidence. Defendant does not challenge this finding on appeal.

investigation of the allegations. She claims that law enforcement erroneously closed the case after focusing on the fact that EGR did not disclose the abuse in a forensic interview, instead of focusing on the specific disclosures that EGR made to the SANE in which she indicated that plaintiff had touched her in her vaginal area.

We are not persuaded that the trial court's factual findings with respect to factor (*l*) were against the great weight of the evidence. While the testimony of the SANE regarding what EGR told her, and the findings stated in the SANE's report, inculpated plaintiff in criminal sexual conduct against EGR, the fact remains that EGR was not able to be forensically interviewed, and neither she nor her sisters disclosed any sexual abuse to investigators. Notably, when EGR *did* disclose sexual abuse to the SANE, it was with defendant in the room, after defendant had informed the SANE that EGR had reported that plaintiff touched her in her vaginal area. Testimony established that the SANE's report was reviewed by police and the prosecutor, and they both, with their professional training and experience, determined that there was not enough to pursue a criminal prosecution. The trial court listened to testimony from both the SANE and the law enforcement officer who investigated the matter, and concluded that the allegations of sexual abuse against EGR had not been proven by a preponderance of the evidence. The trial court was in the best position to assess the credibility of the SANE and the investigating officer, and the court obviously concluded that the testimony of the investigating officer was more credible with regard to the veracity and substance of the allegations explaining why law enforcement closed the case. On this record, we are unable to conclude that the trial court's conclusion was against the great weight of the evidence.

## IV. THE TRIAL COURT'S AWARD OF JOINT LEGAL CUSTODY

Defendant next argues that the trial court abused its discretion in awarding joint legal custody when the record clearly reflected that the parties could not agree, cooperate and work together on major and important issues impacting the welfare of their children. We disagree.

## A. APPLICABLE LAW

When determining whether to award the parties joint legal custody, the trial court must first determine the ability of the parents to cooperate and agree as a general matter on important decisions that impact the welfare of the children. *Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020). As this Court recognized:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [*Id*. (quotation marks and citation omitted).]

## B. ANALYSIS

The thrust of defendant's argument on appeal is that she ought to have been awarded sole legal custody given that she was primarily responsible for the care of the children during the parties' marriage, particularly with regard to their healthcare and their educational needs. Defendant also points out that the parties have difficulty communicating and cooperating, and plaintiff was not aware of decisions made regarding transferring the children to a different school, and moving them to different medical providers.

We acknowledge that the record reflects that the parties share a highly contentious history fraught with allegations of sexual and physical abuse. We also acknowledge that the record supports that defendant unilaterally made decisions with regard to the children's education and their healthcare, both before and after the parties separated. However, the fact remains that the parties are now divorced, and while plaintiff allowed defendant to manage the children's healthcare and educational decisions during the parties' marriage as part of their marital partnership, circumstances have now changed, and plaintiff was adamant at trial that he wanted to step up and become involved in his children's lives, including medical and educational matters. While plaintiff's history of engaging with the children's new school was less than desirable, the record also disclosed that plaintiff had an outstanding PPO against him, and his concerns regarding violating the PPO inhibited his decisions regarding contact with the school, and attendance on the school premises. Plaintiff also made it very clear that he was willing to set aside his differences with defendant and work together for the best interests of the children. Under these circumstances, we agree with the trial court's determination that the parties could work together to make good decisions for their children's welfare, and therefore an award of joint legal custody did not amount to an abuse of discretion.

Affirmed.

/s/ James Robert Redford
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

-11-